UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL WAYNE PATTERSON,

                 Plaintiff,

                                                    DECISION AND ORDER

                                                    13-CV-6416L

         v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

                 Defendant.
_____

## <u>INTRODUCTION</u>

       Plaintiff Michael Wayne Patterson ("Plaintiff") brings this action pursuant to sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Plaintiff seeks review of a final decision of the Acting Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Specifically, Plaintiff alleges that the decision of the ALJ John P. Costello, denying his application for benefits, was against the weight of substantial evidence contained in the record and contrary to the treating physician rule. Plaintiff further argues that there is no evidence supporting the ALJ's assertion that Plaintiff is able to perform work at a medium exertional level.

       Plaintiff moves for judgment on the pleadings, on grounds that the Commissioner's decision was erroneous. The Commissioner cross moves for judgment on the pleadings pursuant

to Fed. R. Civ. P. 12(c), on grounds that the ALJ's decision was supported by substantial evidence. For the reasons set forth below, the Court finds that the decision of the Commissioner is supported by substantial evidence and is in accordance with applicable law. Therefore, the Commissioner's cross motion for judgment on the pleadings is granted, and the Commissioner's decision is affirmed.

## PROCEDURAL POSTURE

Plaintiff filed applications for DIB and SSI on March 8, 2011, originally alleging disability since July 1, 2005, due to a bilateral hip condition requiring hip replacement surgeries in 2005 and 2010, depression, and substance abuse (Transcript of Administrative Proceedings at pages 188-200, 237, 242, 261) (hereinafter "Tr."). His applications were denied. (Tr. 85-86, 89-92). After administrative hearings on May 15, 2012 (where Plaintiff stipulated to amending his alleged onset date of disability to June 15, 2009)[1], and June 26, 2012 (Tr. 27-77), ALJ John P. Costello issued a decision denying Plaintiff's applications on July 25, 2012. (Tr. 10-20). That decision became the Commissioner's final decision on June 14, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). This action followed.

## FACTUAL BACKGROUND

Familiarity with the pertinent facts, summarized below, is presumed.

---

[1] When Plaintiff appeared before the ALJ at the first administrative hearing, Plaintiff requested to amend his onset date from July 1, 2005 to June 15, 2009, which was the date of his 55th birthday. The ALJ explained that for Social Security purposes, one's birthday is in fact the day before his or her calendar birthday, so Plaintiff's counsel and the ALJ agreed to amend the alleged onset date to June 14, 2009. (*See* Tr. 32). This amendment seems to be for purposes of labeling Plaintiff as an individual "of advanced age." *See* 20 C.F.R. § 404.1568(d)(4).

Plaintiff was born on June 15, 1954 and was fifty-five years old on the alleged onset date of disability. (Tr. 18, 237). He reported a tenth grade education, completed in June 1972, and is able to communicate in English. (Tr. 18). Plaintiff has a work history beginning in 1969 which includes janitorial maintenance and property maintenance work. (Tr. 204-206, 243).

Plaintiff's primary medical diagnoses include degenerative joint disease of the hips (following bilateral hip replacement), Hepatitis C, substance abuse, depression, insomnia, and tension headaches. (Tr. 34).

## DISCUSSION

### I.       Standard for Determining Disability

An individual is entitled to disability benefits under the Social Security Act if the individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Federal regulations provide a five-step analysis that the Commissioners must follow in determining eligibility for disability insurance benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If he is engaged in such activity, he is not eligible for benefits. *Id.* If he is not engaged in such activity, inquiry continues to the second step, which decides whether the claimant's impairment is "severe"—i.e., one that significantly limits his physical or mental ability to do basic work activities. *Id.* If the impairment is not severe, benefits are denied. 20 C.F.R. § 404.1520(c). If the impairment is severe, the analysis moves to the third step,

determining whether the claimant's impairments meet or are equivalent to those set forth in the "Listing of Impairments" in Appendix 1 of the federal regulations. *Id.*

If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's "residual functional capacity" ("RFC"). 20 C.F.R. § 404.1520(e). This valuation measures the claimant's aptitude to engage in basic work activities and includes an assessment of the demands of the applicant's past work, if any. *Id.* If the claimant's RFC permits him to perform his prior work, benefits are denied. *Id.* If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. 20 C.F.R. § 404.1520(f). If he does not, benefits are awarded. 20 C.F.R. § 404.1520(f); *Bowen v. City of New York*, 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).

The plaintiff bears the burden of proof during the first four steps of the analysis. At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work existing in the national economy. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). If the Commissioner finds that the applicant is unable perform any other work, the applicant is considered disabled and is eligible for disability benefits. 20 C.F.R. § 404.1520(f).

## II.   The ALJ's Decision

At the first step, the ALJ decided that while Plaintiff had performed work activity, it did not rise to the level of substantial gainful activity since his amended alleged onset date. (Tr. 12).[2]

---

[2] In both of his initial applications, claimant (Plaintiff) alleged disability beginning July 1, 2005. After denial of his claims on June 28, 2011, Plaintiff filed a written request for a hearing. (Tr. 10). Subsequent to this hearing, Plaintiff amended his onset date of disability to June 15, 2009. (Tr. 10). As noted by the ALJ, Plaintiff's earnings record shows that the claimant acquired sufficient quarters of coverage to remain insured through

At step two, the ALJ found that Plaintiff had degenerative joint disease of the hips (post-bilateral hip replacement), depressive disorder, not otherwise specified (NOS) and substance abuse disorder, which constituted severe impairments. (Tr. 12). But, the ALJ found that Plaintiff's impairments, both individually and combined, did not meet or an equal impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14).

Next, the ALJ determined that Plaintiff retained the residual functional capacity to perform medium work as defined in the Commissioner's regulations, except that Plaintiff would be limited to simple tasks with only occasional changes in work setting due to difficulty handling stress. (Tr. 14-18).

At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a janitor, citing the vocational expert's determination that janitorial work would not be possible for Plaintiff with his limitations. (Tr. 13, 18). At step five, the ALJ considered Plaintiff's vocational profile and RFC for medium work, and concluded that other work existed that Plaintiff could perform within the framework of Medical-Vocational Rule 203.11. (Tr. 18-19); *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. The vocational expert identified such work include the positions of industrial cleaner and dining room attendant. (Tr. 19).

The ALJ relied on several factors in determining that Plaintiff's pain was not as severe as alleged. Plaintiff did not seek treatment for his hip pain for a period of five years following left hip replacement surgery. (Tr. 16). When Plaintiff returned to orthopedic surgeon John Klibanoff, M.D. in February 2010, Dr. Klibanoff recommended a right hip replacement, which was performed in March 2010. Following his surgery, Plaintiff made two return visits to Dr. Klibanoff and had no further complaints. This, along with the fact that Plaintiff did not have

---

December 31, 2012. (Tr. 10). Thus, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. (Tr. 10). The ALJ held that the claimant had not engaged in substantial gainful activity since June 15, 2009. (Tr. 12).

additional treatment for his hip pain since May 2011, were factors that led the ALJ to conclude that Plaintiff was capable of performing work as determined by the vocational expert.

Additionally, Plaintiff's untruthful testimony discredits the reliability of his testimony. At his May 2012 hearing, Plaintiff was specifically asked whether or not he had worked since the alleged onset date. Plaintiff testified that he had not worked since the alleged onset date and was not employed at the time of hearing. After the hearing, information provided by Plaintiff's employer revealed that the Plaintiff's statements were false. Plaintiff had been working at the time of the hearing and had been working for many months prior to that. When the court received this information, it scheduled a supplemental hearing, at which the Plaintiff admitted that he had testified untruthfully at the first hearing. (Tr. 16, 315).

Accordingly, the ALJ denied Plaintiff's applications for DIB and SSI. (Tr. 19-20).

## III.     Jurisdiction and Standards of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Additionally, § 405(g) articulates that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as being "more than a mere scintilla." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. *See Monqeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that it is not the

function of the reviewing court to try the case *de novo* but, assuming the Secretary has applied

the correct legal standards, to decide whether the Secretary's decision is supported by substantial

evidence). The Court is also authorized to review the legal standards employed by the

Commissioner in evaluating Plaintiff's claim. The Court must "scrutinize the record in its

entirety to determine the reasonableness of the decision reached." *Lynn v. Schweiker*, 565 F.

Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).


**IV.** **The Commissioner's decision to deny Plaintiff benefits was supported by substantial evidence in the record.**

The ALJ correctly applied applicable law in finding that Plaintiff was not disabled within

the meaning of the Social Security Act. Sufficient evidence supported his RFC decision as well

as his decision not to give controlling weight to the opinion of  treating physician Dr. Hristo

Colakovski.

**A.** **The ALJ provided good reasons not to assign treating physician Dr. Colakovski's opinion controlling weight in accordance with the Treating Physician Rule.**

It is established that "the medical opinion of a claimant's treating physician is given

controlling weight if it is well supported by medical findings and not inconsistent with other

substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see* 20 C.F.R. §

404.1527(d)(2). In deciding how much weight to grant a treating physician's opinion, the

Commissioner must consider: (1) the length, nature, and extent of the treatment relationship; (2)

the frequency of examination; (3) the evidence presented to support the treating physician's

opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the

opinion is offered by a specialist. 20 C.F.R. § 404.1527(d). The ALJ here must express his

reasons for assigning the weights accorded to both treating and non-treating physicians'

opinions. 20 C.F.R. § 404.1527(d)(2); § 404.1527(f)(2)(ii) (where treating source is not given controlling weight, the ALJ must describe his reasoning as to why he discounted the treating source). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999); *quoting Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Plaintiff contends that the ALJ committed legal error in not giving controlling weight to the opinion of Dr. Colakovski.  I find that the ALJ did not commit any error in discounting Dr. Colakovski's opinion, and that he adequately described his reasons for doing so. First, the documents submitted by several physicians who also examined Plaintiff, including consultative psychologists Dr. Kavitha Finnity, Dr. R. Nobel, and Dr. Celine Payne-Gair, contradicted  the severity of the impairments described by Dr. Colakovski. (Tr. 17, 722, 745, 776). An examination by hip surgeon Dr. John E. Klibanoff showed that both hips were stable on May 10, 2010. (Tr. 17, 845).  Additionally, Colakovski's opinion was inconsistent with other substantial evidence in the record, including Plaintiff's self-reported daily activities (including personal care, attending church and other "group" activities), duties as a kitchen employee (such as dishwashing, cleaning, sweeping, and mopping floors), and the results of objective testing relative to the flexibility and strength of Plaintiff's lower extremities, which were consistently found to have normal strength, muscle tone, and range of motion. (Tr. 15-16, 18, 249-251). Lastly, the fact that Plaintiff failed to seek medical treatment for five years following his surgery greatly diminishes Plaintiff's present claims of disability. These factors, combined with Plaintiff's admittedly untruthful initial testimony about his employment status, "shed an unfavorable light on the reliability of [Plaintiff's] overall testimony." (Tr. 16).

The ALJ more than sufficiently articulated his rationale for discounting the assessment of Dr. Colakovski. (Dkt. #16 at 3) (citing *Halloran v. Barnhart*, 36 F.3d 28, 32-33 (2d Cir. 2004)) (per curiam) (affirming ALJ opinion which did not expressly acknowledge the regulation at 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), but where "the substance" of these rules were not traversed.).

For all of these reasons, I believe the ALJ's decision not to grant Dr. Colakovski's opinion controlling weight was adequately supported and explained.

### B.   The ALJ's correctly evaluated the totality of the medical and non-medical evidence to reach the proper residual functional capacity ("RFC") conclusion.

Residual functional capacity ("RFC") assessments indicate the maximum amount of work an applicant can still perform despite his limitations. 20 C.F.R. § 404.1545. RFC calculations are to be determined based on all relevant evidence in the record. *See* 20 C.F.R. § 416.946. Plaintiff argues that the ALJ failed to properly assess his RFC.  I disagree.

The ALJ provided a thorough evaluation as to why Plaintiff's RFC was supported by Plaintiff's medical records and activities, which taken together suggested functional capacity greater than that claimed by Plaintiff:

> The claimant can perform his own personal care: He is able to cook and shop. The claimant attends church. The claimant is currently working at a physically demanding job that requires walking, standing, lifting and carrying. The claimant has limited objective findings. A right hip x-ray showed that his right hip replacement was healing well. I believe that the claimant maintains the ability to engage in activities such as prolonged sitting, standing and walking based upon the medical records and the claimant's daily activities. I also note that the claimant is limited to lifting fifty pounds. The claimant has difficulty lifting over that amount because of his bilateral hip problem.

(Tr. 17).

The ALJ specifically addressed Plaintiff's difficulties with stress and completing complex work, but relied on examining psychologist Dr. Finnity's opinion that Plaintiff could

still complete simple tasks as he had intact attention and concentration. (Tr. 17-18). The ALJ gave significant weight to Dr. Finnity because of his "specific knowledge of how the claimant's conditions affect his ability to work." *Id.*

The objective medical records support the ALJ's RFC finding and contradict Plaintiff's claim that he was incapable of performing work at a medium exertional level, limited to simple tasks with only occasional changes in work setting due to difficulty handling stress.

Plaintiff's own statements that he worked at a restaurant since August 12, 2011, washing dishes, cleaning, sweeping, preparing food, and mopping floors, demonstrates that he is capable of working. (Tr. 175-76, 297, 98); (Dkt. # 11-1 at 16). His employer there even noted that Plaintiff was a proficient and prompt employee, working fifteen to twenty-two hours per week and making eight dollars per hour. (Dkt. # 11-1 at 15-16). Plaintiff admitted lifting and carrying an estimated fifteen pounds in the course of his duties at the restaurant. (Dkt. # 11-1 at 16.)

In assessing whether there were jobs in the national economy that Plaintiff could perform, vocational expert Julie Andrews assumed a hypothetical individual with Plaintiff's RFC, who could perform medium work limited to simple tasks and work that involves no more than occasional changes in work setting due to difficulties handling stress. *Id.* She opined that Plaintiff could perform both the kitchen helper and dining room attendant roles. *Id.* She also agreed that Plaintiff's self-reported activities were consistent with the requirements of medium work. *Id.* For the foregoing reasons, I find that the ALJ's decision was supported by substantial evidence, and that the ALJ applied the correct legal standards.

**CONCLUSION**

For the reasons set forth above, I grant the Commissioner's cross motion for judgment on

the pleadings (Dkt. #11). Plaintiff's motion for judgment on the pleadings (Dkt. #9) is denied,

and the Complaint is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      July 29, 2014.

.